# IN THE UNITED STATES DISTRICT COURT IN AND FOR
# THE SOUTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| CAMERON MOOTS, by His Next Friends, Donald Moots and Lezley Moots,<br><br>    Plaintiff,<br><br>vs.<br><br>REBECCA NELSEN, CNM n/k/a REBECCA McKAY, CNM and KNOXVILLE COMMUNITY HOSPITAL, INC., | Civil Action No.    4:14-cv-301<br><br>**"Diversity" / Jury** |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff Cameron Moots, by his Next Friends, Donald Moots and Lezley Moots, for his claims for relief against Defendants Rebecca Nelsen, CNM, n/k/a Rebecca McKay, CNM and Knoxville Community Hospital, Inc., states:

1.  Plaintiff Cameron Moots, a minor, is a resident of St. Louis County, Minnesota. References hereto to "Cameron Moots" shall include both the period before and after his birth.

2.  Defendant Rebecca Nelsen, CNM, n/k/a Rebecca McKay, CNM (hereinafter referred to as "Rebecca Nelsen") was a registered nurse licensed to practice as a certified nurse midwife in the State of Iowa at all times relevant hereto.

3.  Defendant Knoxville Community Hospital, Inc. is an Iowa corporation with its principal place of business in Marion County, Iowa, doing business as Knoxville Hospital and Clinics.

1

4.      At all times material, Knoxville Community Hospital, Inc. was the employer of

Rebecca Nelson.

5.      As alleged herein, all acts or omissions by Rebecca Nelson were committed in the

scope of and during the course of her employment with Knoxville Community

Hospital, Inc.

6.      Jurisdiction is founded on diversity of citizenship and amount (28 U.S.C. §

1332(a)(1)):

   a.   Plaintiff Cameron Moots is a resident of the state of Minnesota.

   b.   Defendant Rebecca Nelsen, CNM, n/k/a Rebecca McKay, CNM was at all
        times relevant hereto a resident of Iowa and a nurse midwife licensed in the
        state of Iowa.

   c.   Defendant Knoxville Community Hospital, Inc. is a corporation organized and
        existing under laws of the state of Iowa with its principal place of business in
        Knoxville, Marion County, Iowa, and is believed to have been the employer
        of Defendant Rebecca Nelsen, CNM, n/k/a Rebecca McKay, CNM at all times
        relevant hereto.

   d.   The matter in controversy exceeds, exclusive of interest and costs, the sum of
        $75,000.

7.      Pursuant to 28 U.S.C. §1391(a), venue is proper in the Southern District of Iowa

because a substantial part of the events giving rise to Plaintiff's claims for relief

as alleged herein, including the medical care that is the subject of this lawsuit and

resulting injuries to Plaintiffs, occurred in Knoxville, Marion County, Iowa.

8.      From December 26, 2006 to August 7, 2007, Lezley Moots received prenatal care

through Rebecca Nelsen relating to her pregnancy with Cameron Moots.

9.      At her December 26, 2006 initial prenatal visit, Lezley reported a pre-pregnancy

weight of 220 pounds.

10.    An ultrasound performed on July 23, 2007 when Lezley was 37 3/7 weeks pregnant found an estimated fetal weight of  3,733 +/- 515 grams.

11.    On a number of occasions late in her pregnancy, Lezley had measured large for gestational age.

12.     At her last prenatal visit on August 7, 2007, Lezley was 39 4/7 weeks pregnant with a fundal height of 42.

13.    On August 7, 2007, Lezley was found to be dilated to 4-5 centimeters and weighed 263 pounds.

14.    On August 7, 2007, Rebecca Nelsen ordered that Lezley's labor be induced the next day utilizing the drug Pitocin.

15.    On August 8, 2007, Lezley was admitted to Knoxville Community Hospital with Pitocin labor induction started at 0847 by Rebecca Nelsen.

16.    Pitocin was increased throughout the day on August 8, 2007 and at 1710 Lezley was noted to be dilated 5 cm.  Induction was stopped for the day and Lezley was sent home.

17.    On August 9, 2007 Lezley returned to Knoxville Area Community Hospital for day 2 of trial Pitocin induction which was started at 0740.

18.    Variable decelerations on the fetal heart monitor were noted starting at 1330 with some appearing late.

19.    At 1612, Lezley was noted to be 9 cm, rim of cervix all around and +1 station with continued variable decelerations observable on the fetal heart monitor.

20.    At 1613, Rebecca Nelsen ruptured Lezley's bag of water with meconium noted.

21.   At 1640, Lezley was noted to be complete and pushing.

22.   At approximately 1708 on August 9, 2007, Rebecca Nelsen encountered a shoulder dystocia during the delivery, to which she responded in part by placing excessive and unnecessary traction on Cameron's head and neck.

23.   The shoulder dystocia was resolved and Cameron Moots was born at 1712 on August 9, 2007, weighing 9 pounds 6.4 ounces.

24.   After his birth, Cameron was noted to have an injured left upper extremity.  He was diagnosed with brachial plexus injury to his left upper extremity.

25.   Cameron's brachial plexus injury and resulting impairment and limitations in his left upper extremity and other parts of his body are permanent.

26.   Defendant Rebecca Nelsen, CNM n/k/a Rebecca McKay, CNM, was negligent in the following particulars:

   a.   Failing to properly diagnose, care for and treat Lezley Moots during her pregnancy, labor and delivery;

   b.   Failing to properly monitor and care for Lezley Moots and Cameron Moots during pregnancy, labor and delivery;

   c.   Failing to timely and properly respond to signs and symptoms during Lezley Moots' pregnancy, labor and delivery;

   d.   Failing to provide a safe and appropriate delivery;

   e.   Failing to anticipate and timely recognize shoulder dystocia;

   f.   Failing to properly manage shoulder dystocia;

   g.   Failing to properly and safely execute maneuvers to relieve shoulder dystocia;

4

h. Failing to timely consult a physician;

i. Applying excess traction and force on Cameron Moots during delivery complicated by shoulder dystocia;

j. Failing to fully and appropriately inform Lezley Moots of increased risk for shoulder dystocia during delivery, along with alternatives to vaginal delivery;

k. Failing to offer Lezley Moots a c-section;

l. Failing to obtain appropriate informed consent for vaginal delivery from Lezley Moots;

m. Failing to perform appropriate diagnostic testing;

n. Failing to appropriately respond to diagnostic test findings;

o. Failing to provide Lezley Moots and Cameron Moots with care and treatment consistent with applicable standards of nursing, midwifery, medical, and obstetrical care; and

p. Other unspecified acts of negligence.

27. As a result of the negligence of Defendant Rebecca Nelsen, Cameron Moots suffered birth trauma and injuries, including severe and permanent injuries to his brachial plexus nerves and his left upper extremity, as well as other parts of his body.

28. The injuries to Cameron Moots were caused by an instrumentality under the exclusive, joint, or concurrent control and management of the Defendant Rebecca Nelson.

29.   In the ordinary course of things, the permanent brachial plexus injury sustained by Cameron Moots could not have happened if reasonable care had been used by Defendant Rebecca Nelson at the time of his birth.

30.   The negligence of Defendant Rebecca Nelson was the cause of the injuries and damages sustained by Cameron Moots, and said injuries and damages would not have happened except for the negligence of said Defendant.

31.   Defendant Knoxville Community Hospital, Inc. is vicariously liable for the harms caused by the negligence of its employee, Defendant Rebecca Nelson.

32.   The injuries and damages sustained by Cameron Moots are within the scope of Defendants' liability and said injuries and damages arose from the same general types of danger that Defendant should have avoided through safe and proper medical, midwifery, and nursing care.

33.   As a result of his injuries, Cameron Moots has in the past and will in the future suffer mental and physical pain and anguish, loss of function, deformity, disability, loss of earnings and earning capacity, loss of enjoyment of life, injuries to other parts of his body, and permanent scarring; and Cameron Moots will incur expenses for medical care and therapy, hospitalization, surgeries, drugs, medicine, and other remedial treatment for said injuries after reaching majority.

34.   Pursuant to Iowa Code § 619.81, Plaintiff certifies the prayer for relief exceeds applicable jurisdictional requirements for the amount in controversy.

WHEREFORE, Plaintiff Cameron Moots, by his Next Friends Donald Moots and Lezley Moots, pray for judgment against Defendants Rebecca Nelsen, CNM n/k/a

Rebecca McKay, CNM and Knoxville Community Hospital, Inc. in an amount which will fully and completely compensate him for his damages, for interest thereon as provided by law, and for the costs of this action.

## JURY DEMAND

Plaintiff hereby demands trial by jury.


/ *BRIAN P. GALLIGAN* /

_____

BRIAN P. GALLIGAN  AT 0002632
GALLIGAN REID  P.C.
300 Walnut Street, Suite 5
Des Moines, IA  50309-2239
Telephone:      (515) 282-3333
Facsimile:      (515) 282-0318
Email:          bgalligan@galliganlaw.com

ATTORNEY FOR PLAINTIFF